Good morning. May it please the court, Janet Schreyer on behalf of the defendant, Gresham Police Officers Kevin Carlson and Gavin Sasser. First, two brief housekeeping matters. I submitted an additional authority, a decision of this court that was decided on Thursday related to qualified immunity in the context of a knife attack very similar to the one at issue in this case. And I did it so late because it only came out two days before argument. So I wanted to make sure the court was aware of that and had that. I know Judge Acuda was on that decision, so I know you're aware of that. Second of all, in preparing for argument, I see that in plaintiff's, what she calls the plaintiff's counsel's excerpt of record, which is actually supplemental excerpt of record. She includes exhibits, three exhibits and pages 49 through 56 of her ER, which were excluded by the trial court as not competent or admissible. And she doesn't legally challenge that ruling in the response and consequently we would ask the court to disregard those things. This is a 1983 excessive use of force case against two Gresham Police Officers who used lethal force against a suspect who was a subject of nine 5911 calls stemming from domestic violence, assault and kidnapping. And when the police arrived, the suspect ignored commands to stop. He fled. He later turned toward the police officers with knives in hand, advanced toward them with the knives, ignoring the officer's request to stop and drop the knives. Excuse me, I think we've lost opposing counsel. Oh. Sam, are you there? Can you? Kathy, would you stop the clock, please, so that Ms. Schrader's time is not used while we're. Kathy, please stop the clock. Hey, Judge, this is Sam. Yes, it looks like they disconnected. I'll give them a minute to come back and if not, I'll give them a call. Here they are right now. OK, I don't know how much you've heard or didn't hear, Ms. Burroughs, but I think so far we've got the housekeeping matters and a very brief beginning to discuss the facts. And with this interruption, I'm going to ask the question of Ms. Schrader. And in our review, there are some disputed facts in this case. And in fact, although the district court didn't specify what disputed facts she was talking about, it appears to me, again, speaking only for myself, that the only way we can analyze this case is to take all disputed facts in favor of the plaintiff and then determine on that version of events whether or not your clients are entitled to qualified immunity. And I would first like you to tell me whether you agree or disagree with that view of our limitation on review. I do agree that in viewing a qualified immunity summary judgment record on appeal, you do take the facts in the light most favorable to the opposing party, in this case, the plaintiff. The disputes of fact in the record must be genuine and material. They must be based on admissible evidence and not simply speculation. And in our view, to the extent the plaintiff attempts to create issues or points to issues of fact, they are not genuine and they're based on mere speculation and surmise. And that is not permissible to create a genuine issue of fact for the purpose of a summary judgment. This case, in fact, presents a question of law because looking at all the evidence in the record, looking at the, even viewing them in the light most favorable to the plaintiff, they show that the officers use deadly force in self-defense of imminent physical danger. But counsel, if you take all, as I understood the record, if you take all the facts in favor of the plaintiff, he was not holding a knife as distinct from a shiny cell phone at the time he was killed. Now, your clients still may be entitled to the summary judgment on qualified immunity, but I'd like you to respond to whether you agree or disagree with that version of his facts. Well, I have two responses. I don't think the record presents a genuine issue of material fact that he was holding a cell phone as opposed to knives at the time he was shot because the only reference to the cell phone was way back before the chase started. And thereafter, he had two cases of beer in his hands, one in each hand, which he then dropped and ran. There's no witness that testified that he had a cell phone in his hands as he fled. However, even if plaintiff's conjecture is accepted that Phelps was near his body after he was shot, correct? Yes, it was heroin paraphernalia and all kinds of other things were, you know, near the body afterwards. But the fact that he also, there were also two knives that were there and that's what the witnesses saw. I mean, that's what the officers saw and that's what the witnesses said. They heard the officer saying, drop the knife, drop the knife before shots were fired and again after. I was going to say one witness didn't hear it until afterwards. Right. And again, taking it, taking the facts and inferences in favor of the plaintiff, he was holding a shiny cell phone and not a knife until that was, in his version, a cry out to justify the shooting afterwards. But he was at least holding a cell phone, something shiny, he was running, etc. So, proceed from there. Sure. First of all, after the shots were fired, the witness went down, but there's no dispute that he continued to move with the knives in hand or shiny object in hand. And so, to the extent the officers perceived this to be a knife and it was in fact a cell phone, the decedent was moving after he hit the ground and the officer said they repeated drop the knife after he hit the ground. So, the fact that he said that, well, there's witnesses in 9-1-1 tape say he said that beforehand, also said that afterwards. Let me urge you again to hear what Greg Draper said because we can't pick one witness over another. So, be careful when you start giving us an argument that says, well, there was one witness that said X. I mean, the real problem here is in so many of these cases, the most likely witness contrary to the officer's version is dead. And so, we are instructed by our case law to parse as best we can. And I'm not sure that we can just take as a given that he was holding a knife at that point and posed the same threat to the officer that he might have a few seconds before. Your task, given that the district court said there is a genuine issue of material fact, is taking the facts in the plaintiff's version, excluding pure speculation, accepting the fact that we need to do some inferences because the witness is no longer alive. Why is it that qualified immunity should apply there? Not because some witness said, yeah, he's still threatening with a knife, but on the smaller case, why should qualified immunity apply? Well, my point was that the evidence, Your Honor, isn't in dispute. It's all consistent. But assuming that it's a cell phone... I'm not sure that's really true. I mean, for example, we have the testimony that the knives that were found there weren't his knives or weren't the kind of knife he carried. That doesn't mean he wasn't carrying some other kind of knife, but the knives get kind of murky. The real question for us, the officer's perception and the officers say they why is that enough to justify the application of qualified immunity? Under this court's case law and the Supreme Court case law, for qualified immunity purposes, even if officers are mistaken and that mistake was reasonable, they're still entitled to qualified immunity. And it doesn't preclude qualified immunity in the circumstances presented on this record. Given the uncontradicted evidence about the 911 calls and what this decedent had done prior to the chase and during the chase, officers Carlson and Sasser had sufficient reason to perceive a threat and no luxury of time or distance to deliberate further. And as this case, the Supreme Court's case in Kessler v. Hughes held, officers are still entitled to qualified immunity if there's a mistake that is reasonable under the circumstances. And here they didn't have luxury of time to think, oh, is it a knife? Is it a gun? Is it a cell phone? He was running, he turned and he rushed at officer Sasser. And under the circumstances presented on the facts in this case, they were reasonable in believing that they were in danger and that they therefore were You may do that and we'll hear next from Ms. Burroughs. Thank you, your honors. I'm not an experienced appellate attorney, so I'm going to give this my best shot. Well, counsel, begin please by giving your name for the record and whom you represent. I'm Michelle Burroughs. I represent the plaintiffs or the appellees in this case, the estate of Bodie Phelps. Thank you. Thank you, your honor. This is an interlocutory appeal under 28 U.S.C. 1291 based upon the denial of qualified immunity by Judge Emerget below. Judge Emerget did not issue a written opinion, which is very common in summary judgment motions. So we are left to assess the record based upon her two sentence or three sentence minute order. However, qualified immunity, as your honor has pointed out, really is hard to assess if you don't know what the facts are, if you don't know what the use of force was, what the presence of the danger was to the victim, Mr. Phelps in this case. Counsel, let me cut to the chase with you as well. Looking at the facts in the light most of reports of very serious criminal activity. He was running away. The officer saw something shiny in his hands and he turned and came towards them. It's somewhat disputed whether knife was said before or after the shots were fired. But that's the situation it seems to me in the light most favorable to your client. In that circumstance, what case or cases would have given every reasonable officer knowledge that they could not use deadly force? Well, the two primary cases would be the Granby-Connor and the Tennessee v. Barnard cases. But those are very general. And the Supreme Court has admonished this court many, many, many times that there has to be something pretty darn close for an officer to know that a circumstance involves excessive force. So are there any cases that are highly similar where this court or the Supreme Court has said running from the police, serious crime, shiny object, turning and coming towards the officers, you still can't use deadly force? I want to answer your question directly, Judge Graber, but part of the problem is the factual scenario that you laid out for this on. It is very disputed. What part of it is disputed? That he was being chased for his... Let me take it apart. That the crimes alleged against him were serious. Do you dispute that? We agree with that and we have probable cause to arrest him. Okay. Okay. That he was running away. Do you agree with that? We agree with that. Okay. And there was something in his hand. Do you agree with that? We agree with that. It was described... Okay. And that he turned and came towards the officers rather than continuing to run away. Do you agree with that? We don't agree with that. The officer did not agree on whether he had knives either. Okay. So take away the turning around piece of my hypothetical. Probable cause to arrest for serious crimes, running away, objecting his hand. Okay. Take it from there. What case is your best case that is specific to this kind of situation? Well, I guess I have somewhat of a disagreement with how specific the cases should be. And I believe that that starts both with Saussure and with Hope versus Helzer. I've also outlined a few other more recent cases to talk about, particularly that you don't need to have an exact consistent case. Well, could you give us what your closest case is, please? To someone running away from Garner, Tennessee versus Garner. There he was playing and was shot in the back. So let me ask you about the, you don't agree he turned around. Both of the police officers report he turned around. So what is the evidence in the record that he did not turn around? Well, the forensic evidence of the autopsy report, the autopsy photographs indicate that either the officers were in much different positions when he was shot or he was in a much different position. Is there any expert testimony? I saw your argument. I saw attorney argument. I didn't see any expert for forensic reconstruction or any exploration. Is there anything besides attorney argument there? Dr. Nelson, who was the pathologist, described the bullet paths, the wounds, the injuries that were caused, and he testified as to the autopsy report. Dr. Nelson's testimony from Granger is in the autopsy report and the autopsy photographs were attached to the excerpt of the record. So he said that he was, if I recall correctly, he was shot from the front and the side. There is one bullet wound that goes through the left gluteus muscle. Did he testify that he was shot in the back? He testified. Was there testimony that he was shot in the back? Dr. Nelson testified that the wound in the left buttocks entered into the gluteus. Did he testify from the side? And there were shots from the side. That is correct. So, again, Judge Graber, your scenario, I think the key facts that are in dispute are, did Bodie Phelps have knives at all? If he didn't, then this is an unjustified, excessive force, unreasonable. Well, that's the question. That's the very question. That's why I asked it the way I We have to assume right now that what was in his hand was not a knife. But I don't get, I have trouble leaping from that to unjustified without further analysis. That's my problem, I guess. May I ask, Your Honor, what is your conclusion there? The question that the Supreme Court puts to us is whether there are cases that are so close to this situation that have held that force is excessive that any reasonable officer would know that the force would be excessive. That's what Pucella and a bunch of other cases from this circuit that have gone up have told us, that you can't just rely on the generalization that force has to be proportionate to the problem at hand. So that's why we're asking you for the closest possible cases to your situation. And let me add one piece to the question, which is, it isn't just whether he actually had a knife. We need to look at this from the perspective of the officers. And if you acknowledge that he seemed to have something in his hand, the question gets converted to, is that something the officers could reasonably have perceived to be a knife? Well, in answer to that, Judge Clifton, Officer Carlson was very, very specific. He said Bodie Phelps rolled around after fumbling around in his pocket with both knives, extended and lunged at him. Officer Tosser didn't see any knives. And he saw the left hand always at the side with the shiny object in it. And then Officer Carlson didn't say, I made a mistake. I thought it was a knife. I thought it was a weapon. I thought there would be a weapon. He said there were two knives extended. He didn't, there was no mistake. So we, Bodie Phelps didn't have the knives beforehand. He was seen with something that appeared to be a cell phone. And then the question then of the inconsistencies between the officer's testimony leads me to believe that Bodie Phelps was running down the street, unarmed, trying to get away from the cops. He stopped, they saw him stop and they opened fire. There's a question about how the shooting happened that is inconsistent between the two officers. One eyewitness sees one officer in the middle of the road firing at Bodie and the other, and sees the other officer or an other officer come around from the left side of a van as if being hidden, which would explain some of the strange bullet paths. Because both officers testified very strongly that Bodie Phelps never whirled. He never turned. He came at them straight on and they emptied their weapons into him. So the inconsistencies between the officers and the inconsistencies between the crime scene leads me to argue that a reasonable jury could find they're not telling the truth. So if they're not telling the truth, they shot an unarmed man in the dark and then realized that they shot an unarmed man and made us believe because they're the only witnesses to the shooting. The other one is dead. So do I have an exact case that says that? I cannot find one, but I don't believe you really need to go beyond the confines of Granby, Connor or Tennessee versus Garner. Officers do not have the right to shoot unarmed people. Even if they are a drug addict, even if they have been accused of committing violent crimes, we want our police officers to use reasonable restraint in using deadly force. That's where we are with qualified immunity. It is giving this liberal viewpoint that officers should be allowed to shoot. They should have to believe their story and can't question it at all. So no, I don't have a specific case exactly on point, but is that what the law is about? The guidance of Granby, Connor has been in the applicable since about 1985. These officers testified that they were aware of that. Is it unreasonable force for an officer to shoot an unarmed man? Yes, it is. It has been for 30 years. And I don't think the officers needed to have any more clearly established law on that. And I don't think they were being mistaken. I think they knew exactly what they were going to testify to. So in this instance, there has been a lot of argument in opposing attacking the evidence that we have submitted. They've called it inadmissible, which is not the appropriate standard. They've called it vague. They've argued back and forth with what means something. They've tried to impeach witnesses. And I think that lends itself exactly the problem this court is facing. If we're fighting about the facts, if we're fighting about the credibility of the witnesses, this case needs to be tried. It seems to me that your honors have three choices now. You can uphold the findings of Judge Emergant and find that there is no qualified immunity. I know Judge Emergant will have this on our trial docket sometime late summer. So we can be all done with this issue. The jury could assess all these facts, decide whether or not these officers really are heroes. They got a medal for shooting Mr. Phelps. So did they do it right? Is it justified? Are the facts their way? You could remand it back for further finding. We might be back up here on whether those further findings support qualified immunity. Or you could just give the officers qualified immunity, and then we would have to go forward. Either way, there's never going to be. The only one way is to assess the facts is to go back to trial. And the Supreme Court said in Johnson versus Jones, that granting qualified immunity at this interlocutory stage could actually cause more harm. And actually, we could be done with this case, have the facts assessed, know what happened. And all the parties, the officers included, could have a finality to this. If the officers feel that's what happened, then this trial would clear their name. The Phelps family, who doesn't know what happened, who believe that there has not been a complete reviewing of the facts, they could be resolved. This whole thing could be done as soon as trial is over. Sometime at the end of summer. And in fact, that's what Johnson v. Jones said, that sometimes just going to trial is faster than dragging out this issue. Because what we're really talking about now is a dispute of facts. And we can't know whether or not the law is clearly established. We can't know whether or not qualified immunity applies until we know what the facts are. And I, we believe that the facts indicate that Brody Phelps, troubled addict that he was, should have been arrested, ran away from the cops, which is always a bad idea. And then was shot to death in the street. And we know that the officers were left alone at the crime scene for several minutes. The dispatch records show anywhere from five to ten minutes. And they were seen moving around the scene. They were seen moving and touching things. Nobody, no officer who arrived can remember removing things from that dead kid's body. So we have a very set of confusing, disjointed facts that I don't think we can resolve unless we submit it to a jury. And that's all I have, Your Honors. Thank you so much. Thank you, Ms. Burroughs. Ms. Schraer, you have a little bit of rebuttal time remaining. Sorry. So I would like to remind the court that Plaintiff's Counsel was unable to supply this court with any cases with any degree of specificity that would have informed these officers that the shooting under this circumstance was not constitutionally permissible. And I would submit that there are none. The objectively reasonable standard that the officers are judged by and used in using deadly force must take into account under the Graham versus Connor case, the calculus of reasonableness. And it must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, rapidly evolving about the amount of force that is necessary to be used. In this case, even assuming that the officers misperceived a cell phone as being a knife, they were still permitted to make the split-second decision that they had to in order to what they believe was avoid lethal force on the part of the decedent. Recall that the decedent had committed multiple felonies, allegedly. He was running at 3 a.m. It's in the pitch dark. This is a man with multiple felony arrest warrants out for him as his girlfriend had informed the police on her 911 call. And so this is not just anybody on the street, but the undisputed evidence reveals that this was a very dangerous man who was fleeing from the police. They saw him fumbling in front of him as he was running away from them with his arms. And they didn't know what they were fumbling for. The evidence shows he had a jacket with large pockets in it. And so whether he pulled out a cell phone when he turned around to face them and started toward them or whether he pulled out knives doesn't matter. They had to make a split-second decision in a rapidly evolving circumstance in the dark, in the middle of the night with someone that they knew had felony, potential felonies that he had just committed in addition to felony warrants out for his arrest. And I suggest there are no cases that would establish that there was a clearly, it was clear to them that they couldn't use lethal force under that circumstance. Some of the facts, I would ask the court to look, I know you're reading the briefs, but our reply brief outlines very specifically with record sites on page eight, uncontroverted material facts established entitlement to immunity. That's on page eight. And then thereafter on page 11, corroborated evidence that plaintiff's analysis ignores. And I would suggest that you look at those because plaintiffs, bless you, plaintiffs ignore that. Also multiple of the factual sites, factual assertions that they make are unsupported by the record. For example, the one suggesting to you, and the brief baldly says this, that he was shot in the back is absolutely not supported by the record. The medical examiner, Dr. Nelson said that was not true. He was either shot by the front or the side. And the evidence is that these officers were in the front and the side. So that is not inconsistent. And the cases that you can't shoot a person in the back simply don't apply here. This isn't, that isn't the facts of this case. Um, the, if you also read the transcript of this, uh, hearing before Judge Emerget, you will see that she challenged plaintiff's counsel to supply evidence on multiple of the factual things, so-called factual things that were being asserted on behalf of the plaintiff. And there was no evidence. It's simply speculation. Um, on this circumstance, um, there are no cases being available to provide these officers with notice, uh, that under these challenging circumstances in the middle of the night in the dark, when someone turns and, uh, faces them, all of a sudden has a shiny object. Obviously the police officers thought there was a knife because they yelled, drop the knife, drop the knife. There's undisputed 911 call that that was yelled out and then boom, boom, boom after that. But either way, um, the officers believed there was a knife, reasonably believed there was a knife. And under this court's authority and under the U.S. Supreme Court's authority, um, qualified immunity is required to be provided to these officers because after all qualified immunity is, is not really a defense. It's an immunity. And the purpose is to avoid having to go to trial. And when as here, the uncontradicted record and the law supports the application of immunity, um, having to move forward for trial, um, simply obviates the whole purpose of the doctrine. And I would ask that you reverse the trial court's decision and apply qualified immunity to both officers. Thank you, counsel. The case just argued is submitted, and we appreciate very much helpful arguments from both counsel in this difficult case. With that, uh, this case is submitted and we stand adjourned for this morning's session.
judges: Graber, Clifton, Ikuta